**ENSO LAW L.L.P.**
David Welch (SBN251693)
500 South Grand Avenue, 18th Floor
Los Angeles California 90071
Phone:       (213) 314-0028
Email:       litigation@enso.law

*Attorneys for Plaintiff SAFEWAY TAX RELIEF, INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SAFEWAY TAX RELIEF, INC. a California Corporation,<br><br>        PLAINTIFF,<br><br>        v.<br><br>AMAR OTHMAN, an individual, AFJP Services Corp., a California corporation; and DOES 1 Through 10, inclusive,<br><br>        DEFENDANTS. | Case No. 8:23-cv-1591<br><br>**UNLIMITED CASE**<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1) Copyright Infringement<br>2) Breach of Contract<br>3) Fraud<br>4) Conversion<br>5) Trade Libel<br>6) Misappropriation of Trade Secrets<br>7) Violation of Unfair Competition Law (Business and Professions Code §17200) |

1

Plaintiff SAFEWAY TAX RELIEF, INC. ("Safeway"), hereby complains and alleges, upon information and belief, as follows:

## SUMMARY OF THE ACTION

1.     This action arises from the theft of confidential corporate information by a former employee, Amar Othman ("Defendant") and the ongoing exploitation of that corporate information for Defendant's benefit.

2.      Defendant was hired by Safeway, a tax consultancy firm, on or about October 1, 2022, as an independent sales contractor.  On or about October 8, 2022, Defendant signed an independent contractor agreement and non-disclosure agreement, both of which prevent Defendant from taking company property as well as using company confidential client information to Defendant's benefit.

3.     Defendant, with full knowledge of his obligations to the company, in May of 2022, breached these agreements and began to copy and transfer the company's client and potential client information to Defendant's own customer relationship management (CRM) system for his new business Canvatax.

4.     Over a period of weeks Defendant stole no less than 4,500 company client leads ("Leads") which carry a potential value of around four million dollars.

5.     At the same time that Defendant stole Safeway's Leads, Defendant infringed the copyright of Safeway's website when building a website for his competing business, Canvatax. Defendant wholesale copied Safeway's website, www.safewaytax.com, at times, only changing the company name from Safewaytax to Canvatax, or changing such words as "mission" to "objective."  Defendant and Canvatax's website, www.canvatax.com, utilized the same color scheme and similar font as Safeway's website to further confuse customers. Defendants, Amar Othman and Canvatax, published the infringing website, www.canvatax.com, on May 28, 2023.

6.     After downloading the leads and publishing Canvatax's infringing website, Defendants have stolen business away from Safeway to the benefit of

**VERIFIED COMPLAINT FOR EQUITABLE AND LEGAL RELIEF**

1  Defendant and Canvatax.

2      7.    Soon after Safeway discovered that its Leads were stolen by

3  Defendants, Safeway came to know that Defendants were spreading false

4  information about Safeway. Specifically, Safeway came to know that Defendant

5  Amar was calling current and previous Safeway clients and advising them that

6  Safeway was a fraudulent operation that did no work and had stolen their money.

7      8.    For example, Defendants texted a Safeway client: "hey cancel your

8  service this company is scamming you i got fired after i found out."

9      9.    As a result of Defendants' actions of spreading false information, some

10  of Safeway's customers have demanded a return of the money they paid, and/or

11  cancelled ongoing contracts with Safeway. Defendants' falsehoods have had a

12  detrimental effect on Safeway's reputation.

13      10.    In this lawsuit, Safeway seeks injunctive relief to stop the ongoing,

14  indefensible actions of Defendants and to be fairly and reasonably compensated for

15  the damages caused by Defendants to Safeway's business as well as to its

16  reputation.

17  **THE PARTIES**

18      11.    Plaintiff Safeway Tax Relief, Inc. ("Safeway") is, and at all times

19  material herein, was a corporation incorporated in the State of California with its main

20  place of business in Orange County, California.

21      12.    Defendant Amar Othman is, and at all times material herein was, an

22  individual residing in Orange County in the state of California. Defendant is a former

23  contractor of Safeway and is currently the Chief Executive Officer of AFJP

24  SERVICES CORP., doing business as CANVATAX.

25      13.    Defendant AFJP Services Corp. ("Canvatax"), is a California

26  corporation doing business as CANVATAX and is owned and operated by Amar

27  Othman. It is alleged that Canvatax is being used to convert and profit from Safeway's

28  confidential trade secret information and copyrights.

14.     Safeway are ignorant of the true names and capacities, whether individual, corporate, or otherwise, of defendants named herein as Does 1 through 10, inclusive, and Safeway therefore sues these defendants by their fictitious names. Safeway will amend this Complaint to state the true names and capacities of such fictitiously named defendants when ascertained.  Safeway are informed and believe and thereon allege that each of these fictitiously named defendants acted or omitted to act as herein alleged, thereby actually and proximately causing injury or damages to Safeway as more particularly alleged herein and is consequently also responsible for Safeway' damages and injuries.  Amar Othman, Canvatax, and DOES 1 through 10 are referred to collectively herein as the "Defendants."

15.     Safeway  is informed and believes, and on that basis alleges, that at all times material hereto, each Defendant was an agent, servant, employee, representative, partner, principal, co-venturer, representative, joint venturer, associate or alter ego of each other Defendant, and in doing things, acts, omissions and wrongs hereinafter alleged, acted within the scope of its actual, apparent and/or ostensible authority of such employment, agency, venture, servitude or alter ego relationship, and with the knowledge, permission and consent of its Co-Defendants, and each Defendant aided, abetted and conspired with the other Defendants, and each of them, in the acts and omissions alleged herein; and that all acts and/or omissions alleged of each Defendant were authorized, ratified, approved and or assented to by the remaining Defendants, and each of them, such that each should be held liable for the acts of the other.

## JURISDICTION AND VENUE

16.     This action arises under the Copyright Act of the United States, 17 U.S.C. §§ 101, *et seq.* and under statutory and common law unfair competition laws.

17.     This Court has original jurisdiction of this action under 17 U.S.C. § 501, *et seq.* and 28 U.S.C. §§ 1338(a).

18.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because

the claims of unfair competition, breach of contract, fraud, conversion, trade libel, and misappropriation of trade secrets are substantially related to the copyright infringement claim to form part of the same case or controversy.

19.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b) and (c) because the copyright infringement, breach of contract, fraud, conversion, trade libel, and all other misconduct occurred within this district in Irvine, California. Furthermore, each Defendant either resides in this district or has substantial and continuous ties to this district. Furthermore, 28 U.S.C. § 1400(a) allows this action to be brought in this district where Defendants reside.

## **GENERAL ALLEGATIONS**

20.    Defendant Amar Othman is the brother of Safeway founder Ahmad Othman. Defendant Amar was hired on October 1, 2022, to assist Safeway in sales of its tax consultancy services. However, soon after Amar's hiring it became clear to the staff and management team that Amar would have trouble in his position.

21.    Although Defendant was related to the founder, he was provided no special accommodations.

22.    Prior to starting work with Safeway, Defendant Amar was required to review and sign a Safeway Independent Contractor Agreement and Non-Disclosure Agreement. Defendant signed the Independent Contractor Agreement on October 8, 2022.

23.    In paragraph 2.1 of Defendant's Independent Contractor Agreement, Defendant agreed to not disclose any Confidential Information, which included "all financial, accounting records, lists of property owned by the company…client and customer lists, and other company data and information related to its business."

24.    In paragraph 2.2 of Defendant's Independent Contractor Agreement, Defendant agreed to return "all originals and copies of records, reports, documents, list, plans, memoranda, notes and other documentation related to the business of the company or containing any confidential information." Defendant also agreed and

acknowledged that any confidential information is the "sole and exclusive property of Safeway."

25. In paragraph 2.4 of Defendant's Independent Contractor Agreement, Defendant agreed that the provisions of paragraphs 2.1 and 2.2 would continue in effect in the event Defendant was terminated.

26. In addition to the Independent Contractor Agreement, Defendant also signed a Non-Disclosure Policy, dated October 8, 2022.

27. Again, Defendant acknowledged and agreed in the Non-Disclosure Policy, that all "records, documents and all information, whether written or not, pertaining to the Company's business activities, included but not limited to, customers, customer lists and customer's accounts, are the confidential and proprietary property of the Company and are to be used exclusively for the benefit of the Company."

28. Defendant also agreed in the Non-Disclosure Agreement that he would not "cop[y] without the express permission of the Company and that upon termination of involvement with the Company, all such confidential and proprietary property and all copies thereof shall be immediately returned to the Company."

29. As an independent sales contractor of the company, Defendant was required to make a daily quota of calls and treat other staff members with respect.

30. However, these bare minimum requirements were too difficult for Defendant Amar to meet. As a result of months of underperformance and conduct which created a hostile work environment for other employees, Defendant was put on a two-day administrative suspension. Even on administrative suspension, Defendant conducted himself in a manner warranting termination. After the suspension, Defendant chose to not return to his position and was terminated on May 17, 2022.

31. Safeway became aware of Defendant Amar's theft and infringement when he admitted to his sister, Ahlam Othman, that he sold over 4,500 Leads from

Safeway and intended to open and operate a rival business. During the same conversation, Defendant Amar offered his sister a position with his new company. Ahlam Othman refused. Ahlam Othman immediately told her older brother, Ahmad Othman, of Amar's confession and theft of Safeway property.

32.    Upon learning of this breach, Safeway immediately began to investigate: 1) the theft of its confidential and business information; 2) the claims of Defendant starting a rival business; and 3) other wrongful acts that Defendant may have conducted while employed by Safeway.

33.    As a result of this investigation, it was discovered that in December of 2022, Safeway CRM "Logics CRM" suffered a data breach. It was also discovered that Defendant Amar may have stolen additional leads while he was employed with the use of a flash drive to download Leads from Logics and/or used his personal cellphone to take photos of the Leads displayed on the screen of his computer. The over 4,500 Leads which Defendant Amar stole cost Safeway approximately $460,646.20 in marketing and advertising costs not including the manhours invested to develop the leads. In total, the stolen Leads could have generated over four million dollars in revenue to Safeway.

34.    In addition to the infringing website, www.canvatax.com, Safeway uncovered fraudulent behavior by Defendant while employed. One such fraud was that Defendant would charge client credit cards, which were on file, without permission. Defendant would then claim that the unauthorized charge was legitimate sale and demand that Safeway pay him a commission. Safeway has since refunded and reimbursed clients whom Defendant defrauded.

35.    Furthermore, Safeway came to know that Defendants were spreading false information about Safeway. Specifically, Safeway came to know that Defendant Amar was calling current and previous Safeway clients and advising them that Safeway was a fraudulent operation that did no work and had stolen their money.

36.    For example, Defendants texted a Safeway client: "hey cancel your service this company is scamming you i got fired after i found out."

37.    As a result of Defendants' actions of spreading false information, some of Safeway's customers have demanded a return of the money they paid, and/or cancelled ongoing contracts with Safeway. Defendants' falsehoods have had a detrimental effect on Safeway's reputation.

38.    Safeway's investigation of Defendants' unlawful conduct is ongoing.

## FIRST CAUSE OF ACTION

### Copyright Infringement — Against All Defendants

### (17 U.S.C. §§ 501, *et seq.*)

39.    Safeway realleges and incorporates by reference, as is fully set forth herein, the allegations in all the preceding paragraphs.

40.    Safeway is the sole and rightful owner of the copyright for the copy drafted on its website, www.safewaytax.com.

41.    Upon information and belief, Defendants have produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed Plaintiff's protected work or derivative of Plaintiff's protected work without its consent or authorization and compensation. Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works and to publicly display its works.

42.    A few examples of Defendants' flagrant copying of constituent elements of Plaintiff's copyrighted website are set forth in Exhibits 1-8.

43.    Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Plaintiff's protected copyrighted work. Defendants have failed to exercise their right and ability to supervise persons within their control to prevent infringement, and they did so with intent to further their financial interest

in the infringement of Plaintiff's website copy. Accordingly, Defendants have directly, contributorily, and vicariously infringed Plaintiff's copyrighted work.

44.    The above-described conduct by Defendants constitutes willful copyright infringement under the Copyright Act.

45.    Because of Defendants' infringing acts, Safeway are entitled to its actual damages, plus attorneys' fees, and Defendants' profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act, to the extent the same are not included as part of Plaintiff's damages.

46.    In the alternative, at the election of Safeway, Safeway is entitled to recover from Defendants statutory damages of $150,000.00 per copyright infringed for Defendants' willful infringement, plus attorneys' fees.

## SECOND CAUSE OF ACTION

### Breach of Written Contract Independent Contract Agreement and Non-Disclosure Agreement – Against Defendant Amar Othman

47.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

48.    On October 8, 2022, Safeway and Defendant Amar entered into a valid and binding Independent Contractor Agreement in which Safeway would hire Defendant Amar.

49.    In this position Defendant Amar would have access to proprietary and confidential Safeway client and potential client information. In order to protect the Safeway's proprietary client information, Safeway required that as a condition to employment Defendant Amar would not disclose or convert Safeway's confidential information, which included Safeway client and potential client information.

50.    Defendant Amar failed to meet its obligations under the agreements including but not limited to maintaining Safeway's confidential client information and returning Safeway's confidential client information upon Defendant Amar's termination.

51.    Defendant Amar's breach frustrated the purpose of the agreement and strikes at the core purpose of the agreement and therefore is a material breach of the licensing agreement.

52.    As a result of the breach, Defendant Amar is obligated to compensate Safeway for the full expected value of what the confidential information would have generated for Safeway had Defendant Amar not breach his agreement.

53.    By virtue of the Defendant's breach of its obligations pursuant to the Independent Contractor Agreement, the Plaintiff has sustained damages in a sum to be determined at trial but believed to exceed $4,000,000.

### THIRD CAUSE OF ACTION

### Conversion – Against All Defendants

54.    Safeway incorporates by reference the allegations in the preceding paragraphs.

55.    Safeway owned and possessed the Leads, which were Safeway's confidential client and potential client information.

56.    Safeway is informed and believes, and thereupon alleges, that Defendants substantially interfered with Safeway's property by knowingly or intentionally stealing, copying, and selling Safeway's confidential client and potential client information, the Leads, without paying Safeway for the Leads.

57.    Safeway did not grant permission or consent to Defendant stealing, copying, and selling the Leads. Safeway was harmed by the destroyed value of the Leads, which had a potential economic value of approximately $4,000,000.

58.    Defendants, by the conduct described above, have converted Safeway property to their own use through wrongful acts, which were substantial factors in causing Safeway's harm.

59.    In doing the acts herein alleged, Defendants acted with oppression, fraud and malice and Safeway is entitled to exemplary or punitive damages.

60.    As an actual and proximate result of Defendants' conversion, Safeway

has been damaged in an amount according to proof but believed to exceed $4,000,000.

## FOURTH CAUSE OF ACTION

### Fraud Under California Law – Against All Defendants

61.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

62.    The Defendants collectively, between and among themselves, conspired to commit fraud by convincing Safeway to provide them with Safeway's intellectual property, including trade secrets, know-how, and confidential company information.

63.    When Defendant Amar signed the Independent Contractor Agreement on or around October 8, 2022, Defendant Amar represented to Plaintiff that Defendant will not disclose any Confidential Information, which included "all financial, accounting records, lists of property owned by the company…client and customer lists, and other company data and information related to its business." Defendant further represented to Plaintiff that this non-disclosure will continue in effect in the event Defendant was terminated.

64.    When Defendant Amar signed the Independent Contractor Agreement on or around October 8, 2022, Defendant Amar represented to Plaintiff that Defendant will return "all originals and copies of records, reports, documents, list, plans, memoranda, notes and other documentation related to the business of the company or containing any confidential information." Defendant acknowledged and represented to Plaintiff that any confidential information is the "sole and exclusive property of Safeway." Defendant further represented to Plaintiff that Defendant's return of proprietary materials and information will continue in effect in the event Defendant was terminated.

65.    When Defendant Amar signed the Non-Disclosure Policy on or around October 8, 2022, Defendant Amar represented to Plaintiff that all "records, documents and all information, whether written or not, pertaining to the Company's business activities, included but not limited to, customers, customer lists and

customer's accounts, are the confidential and proprietary property of the Company and are to be used exclusively for the benefit of the Company."

66.   When Defendant Amar signed the Non-Disclosure Agreement on or around October 8, 2022, Defendant Amar represented to Plaintiff that Defendant will not "cop[y] without the express permission of the Company and that upon termination of involvement with the Company, all such confidential and proprietary property and all copies thereof shall be immediately returned to the Company."

67.   When Defendant Amar signed the Independent Contractor Agreement and the Non-Disclosure Agreement on or around October 8, 2022, Defendant Amar represented to Plaintiff that Defendant will only use the confidential information intellectual property, trademarks, and know-how only for the benefit of Safeway.

68.   However, Defendant Amar's representations to Plaintiff were false.

69.   Defendant Amar either knew the representations were false, made the representations with reckless disregard for the truth, and/or had no reasonable grounds for believing the representations to be true when he made them.

70.   Defendant Amar intended Plaintiff to rely upon Defendant's false representations so that Defendant could access Plaintiff's protected trade secrets, intellectual property, and all other confidential materials and information.

71.   Plaintiff reasonably relied upon Defendant Amar's false representations and allowed Defendant to access Plaintiff's protected trade secrets, intellectual property, and all other confidential materials and information.

72.   With the fraudulently gained access, Defendant Amar stole Plaintiff's protected trade secrets, intellectual property, and all other confidential materials and information, including but not limited to 4,500 Leads, business contacts, business know-hows, and intellectual property materials. Defendant then used these stolen properties to undercut Plaintiff's business, steal customers, and ultimately harm Plaintiff.

VERIFIED COMPLAINT FOR EQUITABLE AND LEGAL RELIEF

73.     Upon information and belief, at all relevant times, Defendant Amar acted on behalf of Defendant Canvatax, for the benefit of Defendant Canvatax, and as an alter-ego of Defendant Canvatax. Defendants Amar and Canvatax have a unity of interest and it would be unjust to treat Defendant Amar's acts as separate from the acts of Defendant Canvatax.

74.     As a result, Safeway suffered harm to its business and loss of revenue.

75.     As an actual and proximate result of Defendant Amar's false representations, Safeway has suffered damages in an amount according to proof but believed to exceed $4,000,000.

## FIFTH CAUSE OF ACTION

### Trade Libel – Against All Defendants

76.     Defendant Amar made statements that Safeway is a fraudulent operation, and that Safeway stole client money.

77.     These statements were clearly understood to have disparaged the quality of Safeway's service.

78.     These statements were made to Safeway's customers, some of whom have believed the statements and have demanded refunds of their money.

79.     Defendant Amar's statements were untrue.

80.     Defendant Amaar knew that the statements were untrue and acted with reckless disregard of the truth or falsity of the statements.

81.     Defendant Amar knew or should have recognized that someone else might act in reliance on the statement, causing, Safeway financial loss.

82.     Safeway has suffered direct financial harm because Safeway customers, some of whom have believed the statements and have demanded refunds of their money in reliance on the false statements by Defendant Amar.

83.     Had defendant Amar's statement not been made, Safeway's customers would not have requested a return of their money and harmed Safeway's reputation.

84. Upon information and belief, at all relevant times, Defendant Amar acted on behalf of Defendant Canvatax, for the benefit of Defendant Canvatax, and as an alter-ego of Defendant Canvatax. Defendants Amar and Canvatax have a unity of interest and it would be unjust to treat Defendant Amar's acts as separate from the acts of Defendant Canvatax.

85. As an actual and proximate result of Defendants' conversion, Safeway has been damaged in an amount according to proof but believed to exceed $4,000,000.

## SIXTH CAUSE OF ACTION

### Misappropriation of Trade Secrets – Against All Defendants

### (Pursuant to Civil Code Section 3426.3)

86. SAFEWAY realleges and incorporates by reference, as is fully set forth herein, the allegations in all the preceding paragraphs.

87. SAFEWAY has developed and owns the proprietary trade secrets in potential customer information and customer information for persons looking for tax solutions, including but not limited to negotiations and advisement of Tax Liens, Tax Appeals, Innocent Spouse Relief, and Tax Levys.

88. SAFEWAY trade secrets provide economic value from not being generally known to the public or to other companies involved in the same business known as tax solutions.

89. SAFEWAY has taken reasonable measures to protect its confidential and trade secret information, know-how, techniques, and products. SAFEWAY's trade secrets are valuable and are closely guarded. SAFEWAY's trade secret derives actual and potential independent economic value from not being generally known to the public or to other people who can obtain economic value from its disclosure or use.

90. Defendants have unlawfully obtained access to SAFEWAY's proprietary customer and potential customer information with the intention to use it to its benefit without the authorization and/or approval of SAFEWAY. Moreover, Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious.

91.    Defendants' continuous use of SAFEWAY's proprietary customer information and potential customer information and other trade secrets will dilute their value and irreparably harm SAFEWAY's intellectual property rights and their ability to engage in business and benefit from manhours of work, investment, and creativity.

92.    Accordingly, SAFEWAY requests that the Court issue an injunction against Defendants and their agents to protect SAFEWAY from Defendants' actual or threatened misappropriation of SAFEWAY's trade secrets.

93.    As an actual and proximate result of Defendants' conversion, Safeway has been damaged in an amount according to proof but believed to exceed $4,000,000.

## SEVENTH CAUSE OF ACTION

### Unfair Competition – Against All Defendants

### Cal. Bus. & Prof. Code §§ 17200, *et seq*. and Common Law

94.    SAFEWAY realleges and incorporates by reference, as is fully set forth herein, the allegations in all the preceding paragraphs.

95.    Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice…"

96.    Herein Defendants committed various acts of unlawful and fraudulent conduct.

97.    By engaging in the alleged unlawful, unfair, and fraudulent conduct, DEFENDANTS have engaged in unlawful, unfair, or fraudulent business acts in violation of §§ 17200, *et seq*. and California common law.

98.    Safeway are thus entitled to restitution of such sums in an amount to be proved at trial, attorneys' fees, and penalties.

///

///

## **PRAYER FOR RELIEF**

**WHEREFORE**, Safeway prays for judgment against Defendants Amar Othman and AFJP Services Corp. and Does 1 through 10, and each of them as follows:

1.    That Defendants and any agents, officers, employees, and anyone acting on their behalf be enjoined from selling, disposing of, moving or otherwise disturbing any Safeway's confidential information;

2.    For compensatory damages in an amount to be determined according to proof at trial, but in an amount that exceeds the jurisdictional threshold for classification as an unlimited civil case;

3.    For restitution of all money, property, profits, and other benefits acquired by Defendants by means of their unfair business practices, fraudulent conduct or infringement;

4.    For punitive and exemplary damages according to proof at trial;

5.    Additional monetary amounts and damages and losses and costs suffered by Safeway and caused by the Defendants' tortious conduct and breaches as alleged herein;

6.    For an accounting;

7.    For attorney's fees and costs of suit incurred herein;

8.    Loss of earnings and profits;

9.    That Defendants be required to account for and pay over Plaintiff the actual damages suffered by Plaintiff as a result of the infringement and any profits of the DEFENDANTS attributable to the infringement of Plaintiff's copyright or exclusive rights under copyright and to pay such damages to Plaintiff as to this Court shall appear just and proper within the provisions of the Copyright Act, or, in the alternative at Plaintiff's election, statutory damages for infringement of each separate copyright as set forth in 17 U.S.C. § 504;

10.   For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law, in an amount to be determined at trial;

11.     For an award of attorneys' fees pursuant to 17 U.S.C. § 106A; 17 U.S.C. § 505;

12.     For statutory damages, profits, and attorneys' fees under Cal. Bus. & Prof. Code §§ 17200, in an amount to be determined at trial;

13.     For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law; and

14.     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: August 23, 2023                **ENSO LAW, L.L.P.**

By:  _/s/ David Welch_____
David Welch
*Attorney for Plaintiff*

**VERIFIED COMPLAINT FOR EQUITABLE AND LEGAL RELIEF**